IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Andrea Mercena Morris, ) | C/A No. 0:12-2799-DCN-PJG |
| Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner ) of Social Security,[1] ) | |
| Defendant. ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Andrea Mercena Morris ("Morris"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be affirmed.

**ADMINISTRATIVE PROCEEDINGS**

In July 2008, Morris applied for DIB, alleging disability beginning January 1, 2008. Morris's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A video hearing was held on June 29, 2010, at which Morris, who was represented by David Hood, Esquire, appeared and testified. After hearing testimony from a

___

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.

Page 1 of 14



vocational expert, the ALJ issued a decision on November 1, 2010 finding that Morris was not disabled. (Tr. 20-27.)

Morris was forty-eight years old on her date last insured. (Tr . 124.) She has a high school education and past relevant work experience as a sewing machine operator, a cashier, a factory inspector, and owner of a small business (arcade). (Tr. 129, 134.) In her application, Morris alleged disability since January 1, 2008 due to hypertension, severe diabetes, disc removed from neck, and irregular heartbeat. (Tr. 128.)

The ALJ found as follows:

1. The claimant last met the insured status requirements of the Social Security Act June 30, 2010.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2008 through her date last insured of June 30, 2010 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the cervical spine; uncontrolled diabetes mellitus with neuropathy and chronic kidney disease Stage III; and uncontrolled hypertension (20 CFR 404.1520(c)).
 \* \* \*
4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 20 CFR 404.1525 and 404.1526).
 \* \* \*
5. . . . [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following additional limitations: She is able to stand in fifteen minute increments only, sit in thirty minute increments, and lift and/or carry no more than five pounds occasionally, no weight frequently.
 \* \* \*
6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
 \* \* \*



7.        The claimant was born . . . [in] 1961, and was 48 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8.        The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.        Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.      Through the date[] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

* * *

11.      The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2008, the alleged onset date, through June 30, 2010, the date last insured (20 CFR 404.1520(g)).

(Tr. 22-27.) The Appeals Council denied Morris's request for review on July 26, 2012, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:



    (1)    whether the claimant is engaged in substantial gainful activity;

    (2)    whether the claimant has a "severe" impairment;

    (3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

    (4)    whether the claimant can perform her past relevant work; and

    (5)    whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.  Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUES

Morris raises the following issues for this judicial review:

I. The testimony of the vocational expert confirmed Morris could not work. Alternatively, the vocational testimony was in conflict with the DOT, and the vocational expert failed to identify the conflict and explain his reasoning for providing testimony in conflict with the DOT.

II. The ALJ failed to properly assess the treating physician's opinions as required by 20 CFR § 404.1527(d)(1)-(6), SSR 96-2p and SSR 96-5p.

III. The ALJ failed to properly evaluate Morris' mental impairments and evaluate evidence both favorable as well as unfavorable to her claims.

(Pl.'s Br., ECF No. 22.)



# DISCUSSION

A.     **Vocational Expert Testimony**

This issue turns on Morris's construction of the vocational expert's testimony in response to questioning by counsel. As indicated above, at Step Five of the sequential process, the Commissioner bears the burden of establishing that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy and this burden may be met by obtaining testimony from a vocational expert.

The ALJ, who gave controlling weight to portions of the opinion of Dr. Jill Peterson, Morris's treating physician, presented a hypothetical question to the vocational expert assuming that a claimant could occasionally lift five pounds and frequently none, which were the restrictions opined by Dr. Peterson. In response to the ALJ's hypothetical, the vocational expert identified various jobs that could be performed with those limitations. When Morris's attorney presented a question with the limitation that the claimant could lift "occasionally up to five pounds, frequently nothing," the vocational expert responded that "[i]f you could lift nothing, then it would eliminate those jobs." (Tr. 46.) Morris contends that this opinion by the vocational expert mandates remand for an award of benefits.

The court disagrees. The ALJ clearly interpreted the vocational expert's testimony to mean that the hypothetical claimant with the lifting restrictions imposed by Dr. Peterson could nonetheless perform certain jobs. This interpretation was not unreasonable. Dr. Peterson expressly opined that Morris could occasionally lift up to five pounds; her attorney's questioning to the vocational expert suggesting that the hypothetical claimant could never lift anything is not consistent with the



restrictions imposed by Dr. Peterson and included in the ALJ's hypothetical question. See Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (noting that "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*") (emphasis in original); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments.") (internal citations omitted). The court therefore finds Morris's argument on this point to be without merit.

Similarly, although Morris argues that the vocational expert's testimony conflicted with the Dictionary of Occupational Titles ("DOT"), she has failed to show an apparent conflict warranting clarification by the ALJ. See Fisher v. Barnhart, 181 F. App'x 359, 365-66 (4th Cir. 2006) (stating that pursuant to SSR 00-4p, an ALJ must elicit a reasonable explanation for any apparent unresolved conflict between the vocational expert's evidence and the DOT before relying on the vocational expert's testimony). She contends that the DOT does not account for a sit/stand option as posited by the ALJ to the vocational expert. However, she cites no authority for the proposition that where the DOT is silent regarding a limitation, such silence presents a conflict with vocational expert testimony accounting for it. Cf. Zblewski v. Astrue, 302 F. App'x 488, 494 (7th Cir. 2008) ("Because the DOT does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the DOT."). Notably, the ALJ specifically asked the vocational expert if his testimony was consistent with the DOT and the vocational expert responded that (with one exception) it was.[3]  (Tr. at 44.)  Morris has failed to show either that the DOT actually conflicted

---

[3] The vocational expert did explain a separate inconsistency not at issue here.



with the vocational expert's testimony or, even if it did, that any conflict was apparent such that the ALJ was required to elicit further explanation. See Fisher, 181 F. App'x at 365-66.

**B.     Treating Physician's Opinion**

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*).  Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

The ALJ gave controlling weight to one of Dr. Peterson's medical statements as to Morris's limitations but gave minimal weight to two other statements completed on the same day. (Compare Tr. at 372-73 with Tr. at 374-77.) Morris argues that the ALJ erred in failing to give controlling



weight to all of Dr. Peterson's medical statements. Again, this argument turns largely on Morris's contention that she can lift no weight frequently.

As an initial matter, the court observes that Dr. Peterson's statement completed with regard to Morris's low back pain does not say that Morris can frequently lift nothing; rather, Dr. Peterson failed to circle an answer on the portion of the form addressing frequent lifting, instead handwriting a note that Morris does not lift frequently so Dr. Peterson could not evaluate how she could tolerate frequent lifting. (Tr. 374.) Accordingly, it appears that she rendered no opinion on this issue with regard to Morris's low back pain.

With regard to the statement completed by Dr. Peterson regarding Morris's cervical spine disorder (Tr. at 376), the ALJ gave Dr. Peterson's statement minimal weight because she observed that Dr. Peterson treated Morris mainly for diabetes, hypertension, and kidney disease. (Tr. at 25.) Although Morris claims that the ALJ did not adequately explain why she gave Dr. Peterson's opinion on this point minimal weight, the court disagrees. The ALJ's explanation is based on Dr. Peterson's treatment notes (Tr. 25, 372-73), as well as the contrary opinions by state agency consulting physicians. These are permissible bases for giving Dr. Peterson's opinion as to limitations from Morris's low back pain and cervical spine disorder minimal weight. See 20 C.F.R. § 404.1527(c) (including, among others, whether the opinion is supported by medical evidence, particularly medical signs and laboratory findings, and consist with the record as a whole, as well as whether the doctor is a specialist in the factors to be considered in weighing medical opinions); Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment notes); Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004) (disagreeing with the argument that the ALJ improperly gave more weight to residual functioning capacity



assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence); SSR 96-6p (stating that "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act"). Moreover, as the ALJ's residual functional capacity assessment was consistent with Dr. Peterson's opinion as well as Morris's own statements regarding her limitations, (see Tr. at 372) the court finds that Morris has failed to show that the ALJ's conclusions are unsupported by substantial evidence.

**C.     Mental Impairment**

Next Morris argues that the ALJ erred in assessing her mental impairments—that is, her depression. Again, the court disagrees. The ALJ considered and discussed the four broad functional areas as required by the regulations at Steps Two and Three of the sequential analysis. See 20 C.F.R. § 404.1520a (setting forth a "special technique" for evaluating mental impairments at Steps Two and Three). The ALJ noted that Morris's depression was controlled with medication. (Tr. 22); see Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"). Further, she observed that Morris was discharged from her mental health facility because she did not meet the criteria for being chronically mentally ill, and that Morris's treating nurse attributed Morris's limitations to her physical problems rather than any mental disorder. (Tr. 369-70.) The court therefore cannot say that the ALJ erred in finding Morris's mental impairments to be non-severe.

**D.     Credibility of Subjective Complaints**

Finally, Morris argues that the ALJ failed to properly evaluate the credibility of Morris's subjective complaints.  In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process."  Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  It appears that in this matter only the second step is at issue,[4] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work."  Id.  In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p.  "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence."  Id. (emphasis added).  "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work."  Craig, 76 F.3d at 595.  A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers."  Id.  The social security regulations inform

---

[4] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged."  Craig, 76 F.3d at 594 (internal quotation omitted).

Page 11 of  14



claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

While Morris points out evidence in the record supporting her credibility, the court cannot say that the ALJ selectively considered unfavorable evidence such that her conclusion is unsupported by substantial evidence or that she erred in her evaluation. With regard to her activities of daily living which the ALJ considered in rejecting Morris's credibility about the severity of her symptoms, Morris contends that a claimant need not be bedridden to be disabled; however, the ALJ noted that Morris was able to maintain her personal hygiene, prepare simple meals, shop for personal items, attend church services, and go out to restaurants with her family. The ALJ's finding that these activities were not inconsistent with her residual functional capacity assessment is not unreasonable.

Further, the ALJ observed that the medical records contained evidence that Morris's neck surgery was helpful. (Tr. 24, 243-48.) Additionally, the ALJ noted that Morris's diabetes could be controlled with treatment and had not prevented her from working in the past, with no indication that her diabetes had worsened since her alleged onset date. (Tr. 24, 292-94); Dixon v. Sullivan, 905



F.2d 237, 238 (8th Cir. 1990) (stating that the Commissioner may consider that a claimant was able to work over a period of years without worsening of the condition at issue).

## RECOMMENDATION

For the foregoing reasons, the court finds that Morris has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 28, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).